"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY HOWARD,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. EDCV 07-1375 AN<br><br>ORDER AFFIRMING FINAL<br>DECISION OF THE<br>COMMISSIONER |

The Court now rules as follows with respect to the five disputed issues in the Joint Stipulation ("JS").[1]

### Issue #1

Plaintiff contends the Administrative Law Judge ("ALJ") selectively considered and misrepresented portions of the psychological evaluation of Ahmad R. Riahinejad, Ph. D., to support the ALJ's finding that Plaintiff was a malingerer. (JS 3.)

During his psychological evaluation, Dr. Riahinejad administered the Minnesota Multiphasic Personality Inventory II ("MMPI II") to Plaintiff. (AR 262.) Dr. Riahinejad noted Plaintiff left six items blank and had scores on two scales that "raise[d] a question about the validity of the case" and a "possibility of exaggeration of symptoms," but also

---

[1] Both parties have consented to proceed before the undersigned Magistrate Judge. In accordance with the Court's Case Management Order, the parties have filed the JS and seek a dispositive order regarding the disputed issues set forth in the JS. The Court's decision is based upon the pleadings, the Administrative Record ("AR"), and the JS.

1 had scores on three other scales indicating "the test may be considered valid." (AR 262.)
2 As to Plaintiff's MMPI II, the ALJ found it showed malingering. (AR 325.) The ALJ
3 has not selectively considered or misrepresented the record. Dr. Riahinejad stated
4 Plaintiff's scores on the MMPI II raised a possibility that Plaintiff was exaggerating his
5 symptoms. The ALJ's finding that Plaintiff was malingering was reasonable under the
6 circumstances and it was based upon Plaintiff's scores on the MMPI II and Dr.
7 Riahinejad's opinion, which constitute substantial evidence. Therefore, Plaintiff's first
8 contention lacks merit.

### Issue #2

10 Plaintiff contends the ALJ improperly rejected the opinions of his treating
11 physician, Jeremiah Umakanthan, M.D.,[2] that he suffered from mood disorder and
12 psychotic disorder, not otherwise specified, and had a Global Assessment of Functioning
13 score of 40. (JS 6.) These opinions are found on an August 30, 2002 Initial Psychiatric
14 Evaluation. (AR 222-225.) Dr. Umakanthan also opined Plaintiff suffered from
15 amphetamine dependency and alcohol abuse. (AR 225.)

16 The present contention fails for the reasons provided by the Commissioner. (*See*
17 JS 7.) The August 30, 2002 opinions appear in an initial evaluation. Dr. Umakanthan
18 subsequently provided opinions on January 16, 2004, that were based on his treatment
19 of Plaintiff. (AR 506-507.) The ALJ discussed and agreed with substantially all of Dr.
20 Umakanthan's January 16, 2004, opinions.[3] (AR 325.) In light of the fact that the ALJ
21 properly considered Dr. Umakanthan's subsequent January 16, 2004 opinions, which
22 were based on his treatment of Plaintiff and entitled to more weight than his initial
23 opinions, the ALJ was not required to give separate consideration to Dr. Umakanthan's

---

[2] Plaintiff fails to identify Dr. Umakanthan, referring to him only as his "treating physician" and he also failed support his contention with citations to the AR. (JS 6.) Dr. Umakanthan was identified by the Commissioner. (JS 7.)

[3] Plaintiff does not contend that the ALJ failed to consider properly Dr. Umakanthan's January 16, 2004 opinions.

Page 2

1  earlier initial opinions.[4/]

## Issue #3

Plaintiff contends the ALJ improperly failed to consider the Clinical Assessment of Julie Hovivian, M.A.[5/] (JS 9.) Ms. Hovivian prepared an assessment of Plaintiff for West End Family Counseling Services. (AR 405-412.)  The present contention fails because it is not supported by the record. As noted by the Commissioner, the ALJ's decision discussed Plaintiff's treatment at West End and specifically discussed the Clinical Assessment prepared by Ms. Hovivian. (JS 10; AR 323.)

## Issue #4

Plaintiff contends the ALJ improperly failed to discuss the side effects of his medications. (JS 11.) Plaintiff alleges that "he can't sleep without meds [*sic*]" and "has panic attacks and mood swings." (JS 11.)

The present contention fails because Plaintiff has not shown that his alleged side effects were severe enough to interfere with his ability to work. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (ALJ need not consider side effects where no evidence that side effects severe enough to interfere with ability to work). Also, contrary to Plaintiff's assertion, the ALJ discussed Plaintiff's panic attacks. The ALJ noted that there is no evidence in the record that Plaintiff experienced panic attacks as frequently as he alleged and that Plaintiff testified that he was able to "talk himself out of" a panic attack. (AR 325-326.)

///

///

---

[4/] Also, as noted by the Commissioner, the August 30, 2002 opinions of Dr. Umakanthan that Plaintiff suffered from mood disorder and psychotic disorder, not otherwise specified, and had a Global Assessment of Functioning score of 40 do not establish any functional limitations. They do not provide insight as to Plaintiff's ability to perform work-related activities. (JS 7; AR 225.)

[5/] Plaintiff failed even to identify Ms. Hovivian, referring to the author of the Clinical Assessment as "a clinician." (JS 9.) Ms. Hovivian was identified by the Commissioner. (JS 10.)

Page 3

**Issue #5**

Plaintiff contends the ALJ improperly rejected the opinions of Ahmad R. Riahinejad, Ph. D, an examining psychologist.[6] (JS 13.) Dr. Riahinejad opined Plaintiff had slight restrictions in his abilities to respond appropriately to changes in a routine work setting and to interact appropriately with the public, supervisors, and co-workers; and moderate restrictions in his ability to respond appropriately to work pressures in a usual work setting. (JS 13; AR 265.)

The ALJ found, *inter alia*, that Plaintiff could "perform simple, repetitive tasks that are object oriented and do not require hypervigilence or fast-paced production/quota work," and that Plaintiff could "have only occasional nonintense contact with the public, co-workers, and supervisors." (AR 322.)

A comparison of the ALJ's findings and Dr. Riahinejad's opinions shows the ALJ's findings embrace Dr. Riahinejad's opinions. Dr. Riahinejad's restrictions regarding changes to and pressures in a work setting are encompassed by the ALJ's restrictions to simple, repetitive work without production quotas. Dr. Riahinejad's restrictions regarding interaction with others is encompassed by the ALJ's restriction from occasional nonintense contact with others. Therefore, any error regarding the rejection of Dr. Riahinejad's opinions was harmless. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.")

///
///

---

[6] Plaintiff also failed to identify Dr. Riahinejad, referring to the author of the opinions at issue only as "the consultative examiner." (JS 13.) Dr. Riahinejad was identified by the Commissioner. (JS 14.)

## Conclusion

Based upon the foregoing, the Court finds the Commissioner's final decision is free of legal error and supported by substantial evidence in the record. IT IS THEREFORE ORDERED that a judgment be entered affirming the Commissioner's final decision and dismissing this action with prejudice.

DATED: September 4, 2008

/s/ Arthur Nakazato
ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE